UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | | |
|---|---|---|
| TIMOTHY C. FITZGERALD | * | |
| Plaintiff | * | |
| v. | * | Civil Case No. 8:23-cv-00259-AAQ |
| MICHELLE WATKINS, et al. | * | |
| Defendants | * | |

**MEMORANDUM OPINION AND ORDER**

This is a case arising out of actions taken by City of District Heights code enforcement and police officers when Plaintiff Timothy Fitzgerald began renovation work on his home. Mr. Fitzgerald specifically alleges claims under 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), the Maryland Declaration of Rights, as well as state law claims for trespass and negligent hiring, training and supervision. Pending before the Court is Defendants Michelle Watkins, Darryl Green, Ronald Tarpley, and the City of District Heights's Motion to Dismiss Mr. Fitzgerald's Complaint. ECF No. 11. The Motion has been fully briefed, and I conclude that a hearing is not necessary under this Court's Local Rules. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons discussed below, Defendants' Motion will be granted, in part, and denied, in part.

**BACKGROUND**

Plaintiff Timothy Fitzgerald alleges that on October 14, 2020, he asked Defendant Michelle Watkins, Code Enforcement Supervisor for the City of District Heights ("the City"), about "the

1

permit requirements for replacing cabinets, tile floors, and appliances at his residence."[1]  ECF No. 1, at 5.  On Ms. Watkins's instruction, Mr. Fitzgerald went to the Prince George's County Department of Permitting, Inspections, and Enforcement ("DPIE") to apply for a building permit, but DPIE informed Mr. Fitzgerald that he did not need a permit "to replace material that already exists."  *Id.*  When Mr. Fitzgerald shared DPIE's response with Ms. Watkins, she said "OK" and gave him the link to the City's website and ordinances.  *Id.*  Mr. Fitzgerald hired a contractor to renovate a bathroom in his basement and, despite DPIE's response, instructed the contractor to apply for a permit.  *See id.*  The contractor made an appointment to fill out the permit application on January 19, 2021, but was unable to enter the City Municipal Center when he arrived for the appointment.  *Id.*  Mr. Fitzgerald communicated with Ms. Watkins via email regarding his unsuccessful efforts to obtain a permit, and on Ms. Watkins's instruction, the contractor went to DPIE to obtain the permit, again to no avail.  *See id.* at 6.

According to Mr. Fitzgerald, on June 21, 2021, Ms. Watkins "intimidat[ed] [the contractor] into providing the access code to [Mr. Fitzgerald's] property's lockbox," and she and Defendant Darryl Green, Code Enforcement Officer for the City of District Heights, thereby "trespassed on the property."  *Id.*; *see id.* at 5.  Ms. Watkins informed Mr. Fitzgerald of her and Mr. Green's "activities within the property" in an email, and Mr. Green then sent Mr. Fitzgerald a civil citation imposing a $1,000 fine for violating the building regulations by "failing to have a building permit."  *Id.* at 6.  Mr. Fitzgerald told Ms. Watkins "to stay off the property until she could produce the City building codes."  *Id.* at 7.  On June 23, 2021, Mr. Fitzgerald asked Mr. Green questions about the requirements for the permit application, and Mr. Green responded that he had "answered [Mr.

---

[1] Because the case is currently before the Court on Defendants' Motion to Dismiss, I accept all well-pled allegations as true for the purpose of deciding this Motion.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Fitzgerald's] questions according to the process that is followed by the City of District Heights," and that the "matter [was] closed" until Mr. Fitzgerald came "to the office to apply for a building permit." *Id.* Over the next six months, Mr. Fitzgerald consulted with various City officials to obtain information about the City's building codes. *See id.* at 7–8.

Mr. Fitzgerald alleges that on February 1, 2022, "District Heights Code Enforcement along with District Heights Police Department Sergeant Tarpley" used intimidation to "illegally enter[]" his property "without probable cause[,] . . . stopping work and dispersing [Mr. Fitzgerald's] second contractor[] and [running] employees off the property for a second time." *Id.* at 8–9 (footnote omitted). Shortly thereafter, Mr. Green sent Mr. Fitzgerald a warning notice and a violation notice. *Id.* at 9. On February 7, 2022, Mr. Green, in response to Mr. Fitzgerald's "republishing newspaper articles about [Mr. Green's] DC Fire Department activities," filed a request for a Temporary Peace Order against Mr. Fitzgerald, which the District Court for Prince George's County denied. *Id.* (footnote omitted).

Throughout March and April of 2022, Mr. Fitzgerald received several notices and citations from Defendants. Specifically, on March 7, 2022, Ms. Watkins issued another violation notice to Mr. Fitzgerald for failure to obtain a building permit. *Id.* On March 30, 2022, Ms. Watkins issued a civil citation against Mr. Fitzgerald for "Violation of the City Building Permit Requirement," and on April 25, 2022, Ms. Watkins issued another civil citation for "Violation of the City Building Permit Requirement Stop-Work Order." *Id.* at 10. The City Code Enforcement Office ultimately declined to prosecute at least two of these citations. *See id.* at 9–10.

Mr. Fitzgerald alleges that throughout the foregoing course of events, Defendants were "not in compliance with the State's building code requirements." *Id.* at 11. Specifically, Mr. Fitzgerald claims that Maryland law "requires local jurisdictions to review and update their

respective code enforcement programs annually and within [twelve] months when the State adopts new building code standards." *Id.* (footnote omitted) (citing Md. Code Ann., Local Gov't § 4-110 (West 2023); Md. Code Regs. 09.12.51.06 (2023)). According to Mr. Fitzgerald, while the State of Maryland is operating under the International Code Council's 2018 International Building Code ("IBC"), the City of District Heights is operating under City Ordinances that have not been updated since 2005. *See id.* at 11–12. Because the City had not adopted the 2018 code, Mr. Fitzgerald claims that it lacked authority over code enforcement activities. *Id.* at 20.

On January 31, 2023, Mr. Fitzgerald filed a Complaint in this Court against the City of District Heights, Ms. Watkins, Mr. Green, and Mr. Tarpley. ECF No. 1. Mr. Fitzgerald's Complaint states five causes of action: (1) trespass; (2) violation of the Fourth Amendment to the U.S. Constitution pursuant to 42 U.S.C. § 1983; (3) violation of Articles 16 and 24 of the Maryland Declaration of Rights; (4) negligent hiring, training, and supervision; and (5) conspiracy to harass under 42 U.S.C. § 1985(3). *See id.* at 19, 22–26. On April 17, 2023, the City of District Heights, on behalf of all Defendants, filed a Motion to Dismiss Mr. Fitzgerald's Complaint for failure to state a claim. ECF No. 11. On May 15, 2023, Mr. Fitzgerald filed a Response in Opposition to Defendants' Motion to Dismiss. ECF No. 21. On May 22, 2023, Defendants filed a Reply. ECF No. 24. Mr. Fitzgerald filed a Sur-Reply on June 11, 2023, ECF No. 25, to which Defendants filed a Response on July 7, 2023, ECF No. 28. Mr. Fitzgerald has filed all of his pleadings pro se.

## STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss, the court considers whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To state a facially plausible claim, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plaintiff need not plead facts that are probable, but must present facts showcasing more than a "sheer possibility" that the conduct perpetrated by the defendant is unlawful. *Id.* Specifically, a plaintiff must provide more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The court should construe all factual allegations in the light most favorable to the plaintiff, *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), and "draw all reasonable inferences in favor of the plaintiff," *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)).

Courts in the Fourth Circuit apply these standards less stringently to pleadings filed by pro se plaintiffs and recognize a duty to construe such pleadings "liberally." *E.g.*, *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018). Indeed, "[p]ro se complaints are entitled to special care to determine whether any possible set of facts would entitle the plaintiff to relief." *Smith v. Esper*, No. GLR-18-3844, 2020 WL 5798085, at *5 (D. Md. Sept. 29, 2020) (citing *Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980) (per curiam)).

**ANALYSIS**

Defendants move to dismiss Mr. Fitzgerald's Complaint under Rule 12(b)(6) for failure to state a claim. ECF No. 11-1, at 2. Defendants argue that because all of Mr. Fitzgerald's claims are based on his "misconstruction of Maryland law" regarding code adoption and enforcement, they should be dismissed. *Id.* at 4. According to Defendants, under the correct interpretation of the laws on which Mr. Fitzgerald relies, the City must publish a new edition of its code of

ordinances only if it has amended an ordinance or enacted a new ordinance within the past year; otherwise, "the State standards apply by operation of law." *Id.* For this reason, Defendants argue, "the City does not lack authority to engage in code enforcement activity, but in fact is required to do so by State law." *Id.* at 5. Defendants also argue that Mr. Fitzgerald's fifth cause of action, for conspiracy to harass, fails for an additional reason — namely, that Mr. Fitzgerald has not pled all of the necessary elements of a § 1985(3) conspiracy claim. *See id.* at 8–9.

Additionally, Defendants raise two immunity defenses. First, Defendants argue that under the doctrine of governmental immunity, the City is immune from suit on Mr. Fitzgerald's state tort claims of trespass and negligent hiring, training, and supervision. *See id.* at 5–8. Second, Defendants argue that Ms. Watkins, Mr. Green, and Mr. Tarpley are entitled to qualified immunity on Mr. Fitzgerald's § 1983 claim for violation of his Fourth Amendment rights. *See id.* at 9–11.

Finally, while each of Mr. Fitzgerald's causes of action arises out of the City's code enforcement activities, none directly challenge the City's failure to update or republish its Code of Ordinances. Defendants, for their part, cite no provision of either the City Code or the State standards authorizing any of the actions Mr. Fitzgerald challenges.

### I. First Cause of Action: Trespass

Under Maryland law, "[a] trespass occurs 'when a defendant interferes with a plaintiff's interest in the exclusive possession of the land by entering or causing something to enter the land.'" *Maryland v. Exxon Mobil Corp.*, 406 F. Supp. 3d 420, 469 (D. Md. 2019) (quoting *Exxon Mobil Corp. v. Albright*, 71 A.3d 30, 94 (Md. 2013)). To state a claim for trespass, a plaintiff must show: "(1) the defendant interfered with a possessory interest in his property, (2) through the defendant's physical act or force against that property, (3) which was executed without the plaintiff's consent." *MCI Commc'ns Servs., Inc. v. Am. Infrastructure-MD, Inc.*, No. GLR-11-3767, 2013 WL

4086401, at *15 (D. Md. Aug. 12, 2013) (citing *Royal Inv. Grp., LLC v. Wang*, 961 A.2d 665, 688 (Md. Ct. Spec. App. 2008)). Whether the plaintiff gave consent "is a question of fact." *Id.* at *16. Additionally, "[c]onsent to possession obtained by fraud, force or intimidation is the same as no consent so far as trespass is concerned." *Farlow v. State*, 265 A.2d 578, 580 (Md. Ct. Spec. App. 1970).

Mr. Fitzgerald has plausibly stated a claim of trespass against Defendants Watkins, Green, and Tarpley. Specifically, Mr. Fitzgerald claims that on June 21, 2021, Ms. Watkins and Mr. Green entered his property after Ms. Watkins "intimidat[ed] [a contractor working on the property] into providing the access code to the property's lockbox." ECF No. 1, at 6. Mr. Fitzgerald subsequently told Ms. Watkins "to stay off the property until she could produce the City building codes." *Id.* at 7. Mr. Fitzgerald claims that on February 1, 2022, Defendants — in particular, "District Heights Code Enforcement along with . . . Sergeant Tarpley" — again used intimidation to enter his property. *Id.* at 8–9. On both occasions, Defendants "ran off contractors" Mr. Fitzgerald had hired, thereby halting work on the property. *Id.* at 22. Thus, Mr. Fitzgerald has plausibly alleged that Defendants physically entered and interfered with his possessory interest in his property, satisfying the first two elements of a trespass claim. Further, because Mr. Fitzgerald alleges that Defendants gained entry to his property through intimidation, he has satisfied the third element of a trespass claim by showing lack of consent. *See Farlow*, 265 A.2d at 580; *c.f., e.g.*, *Royal Inv. Grp.*, 961 A.2d at 688 (upholding trial court's finding, in the context of trespass claim, that a statement "made out of frustration . . . did not constitute consent").

Defendants do not specifically address Mr. Fitzgerald's trespass claim. At most, Defendants argue that Mr. Fitzgerald's trespass claim, like the rest of his claims, fails because it is based on his "misconstruction of Maryland law," ECF No. 11-1, at 4, and that the City is immune

from suit on Mr. Fitzgerald's state tort claims, *id.* at 5.  However, Defendants cite no provision of law giving them authority to enter Mr. Fitzgerald's property without consent.  Additionally, Mr. Fitzgerald brings his trespass claim against the individual officers, in their official, as well as their individual capacities.  This Court has made clear that governmental immunity does not shield individual officers in the latter circumstance.[2]  *See, e.g., Talley v. Anne Arundel Co.*, No. RDB-21-347, 2021 WL 4244759, at *6 (D. Md. Sep. 6, 2021) (dismissing claims against individual officers sued in their official capacities, but allowing clams against the officers in their individual capacities to go forward); *Jackson v. City of Hyattsville*, No. 10-cv-00946-AW, 2010 WL 5173787, at *4 (D. Md. Dec. 13, 2010) ("[G]overnmental immunity does not extend to claims against . . . individual officers.").  The Court will therefore deny Defendants' Motion to Dismiss Mr. Fitzgerald's trespass claim against Defendants Watkins, Green, and Tarpley in their individual capacities.

## II. Second Cause of Action: Violation of Fourth Amendment Rights Under 42 U.S.C. § 1983

The Fourth Amendment to the United States Constitution provides "protection against unreasonable searches and seizures." *E.g., Doe v. Broderick*, 225 F.3d 440, 449 (4th Cir. 2000) (citing *United States v. Miller*, 425 U.S. 435, 440 (1976)).  In the context of the Fourth Amendment, a search occurs "when the government intrudes upon a person's 'reasonable expectation of privacy,'" *Mendes v. Beahm*, No. 5:19-cv-00072, 2020 WL 3473656, at *7 (W.D. Va. June 25, 2020) (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J.,

---

[2] Although Defendants did not raise the defense of public official immunity, it would not apply because Mr. Fitzgerald alleges that Defendants Watkins, Green, and Tarpley committed an intentional tort.  *See, e.g., McCullough v. Anne Arundel County*, No. CCB-19-926, 2020 WL 836235, at *4 (D. Md. Feb. 20, 2020) ("Common law public official immunity does not . . . extend to intentional torts . . . ." (citing *Houghton v. Forrest*, 989 A.2d 223, 228 (Md. 2010))).

concurring)), or "when the government intrudes or trespasses upon a constitutionally protected area for the purposes of obtaining information," *id.* With respect to seizures, the Fourth Amendment's protections extend to real property, and "a seizure of property occurs whenever 'there is some meaningful interference with an individual's possessory interests in that property.'" *Presley v. City of Charlottesville*, 464 F.3d 480, 487 (4th Cir. 2006) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).

Under Supreme Court precedent, "searches for administrative purposes, like searches for evidence of crime, are encompassed by the Fourth Amendment." *In re Subpoenas Duces Tecum*, 51 F. Supp. 2d 726, 731 (W.D. Va. 1999) (citing *Michigan v. Tyler*, 436 U.S. 499, 505–06 (1978)). Indeed, the Supreme Court has "recognized that while routine municipal fire, health, and housing inspection programs are 'less hostile intrusion[s],' they are still 'significant intrusions upon the interests protected by the Fourth Amendment.'" *Gold v. Joyce*, No. 2:21-cv-00150, 2021 WL 2593804, at *4 (S.D. W. Va. June 24, 2021) (alteration in original) (first quoting *Camara v. Mun. Ct.*, 387 U.S. 523, 530 (1967); and then quoting *id.* at 534). Thus, a warrant supported by probable cause is generally required for the execution of an administrative search. *See, e.g.*, *id.*; *Johnson v. City of Durham*, No. 1:09CV954, 2011 WL 4625730, at *6 (M.D.N.C. Sept. 30, 2011); *In re Subpoenas*, 51 F. Supp. 2d at 731. The exceptions to this rule are "few" and "narrow" and are "generally reserved to certain heavily-regulated industries where the government oversight is so extensive 'that no reasonable expectation of privacy . . . could exist for a proprietor over the stock of such an enterprise.'" *Gold*, 2021 WL 2593804, at *4 (omission in original) (quoting *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 313 (1978)).

Mr. Fitzgerald's Fourth Amendment claims arise out of the same events on which he bases his trespass claim. First, construing Mr. Fitzgerald's Complaint liberally, he alleges that

Defendants Watkins, Green, and Tarpley[3] violated his Fourth Amendment right to be free from unreasonable searches by entering his home without a warrant or a legitimate exception to the warrant requirement. ECF No. 1, at 23. As Mr. Fitzgerald notes in his Complaint, *see id.*, the home and the area around it are "where 'privacy expectations are most heightened,'" *Covey v. Assessor of Ohio Cnty.*, 777 F.3d 186, 192 (4th Cir. 2015) (quoting *Florida v. Jardines*, 569 U.S. 1, 7 (2013)), and Fourth Circuit courts have found that administrative searches conducted under circumstances similar to those alleged by Mr. Fitzgerald could constitute Fourth Amendment violations, *see, e.g.*, *Mendes*, 2020 WL 3473656, at *7–8 (denying motion to dismiss plaintiff's claim that County Planning Department's Floodplain Manager violated his Fourth Amendment rights by "trespass[ing] on [plaintiff's] property looking for evidence of potential zoning violations without his consent," *id.* at *7); *Reyes v. Dorchester County*, No. 2:21-CV-00520-DCN-MGB, 2021 WL 8014683, at *1, *9–10 (D.S.C. June 25, 2021) (denying motion to dismiss plaintiffs' claim that county official violated their Fourth Amendment rights by entering the private property around their home and conducting a search without a warrant, notice, or consent), *report and recommendation adopted*, No. 2:21-cv-00520-DCN-MGB, 2022 WL 820029 (D.S.C. Mar. 18, 2022); *see also Gold*, 2021 WL 2593804, at *1–2, *5 (finding that plaintiffs plausibly stated a claim for violation of their Fourth Amendment rights where city officials, including code administration and building and zoning officers, conducted a warrantless administrative search of plaintiffs' commercial building). For these reasons, the Court finds that Mr. Fitzgerald has plausibly alleged that Defendants' warrantless entries onto his residential property on June 21,

---

[3] Mr. Fitzgerald does not specify whether his second cause of action is against all Defendants or only some of them. However, his second cause of action arises out of the same events on which he bases his first cause of action for trespass, which he specifically brings against Defendants Watkins, Green, and Tarpley. *See* ECF No. 1, at 22–24. Additionally, Mr. Fitzgerald does not allege any facts supporting the City's involvement in these events.

2021, and February 1, 2022, constituted unreasonable searches in violation of the Fourth Amendment.

Second, Mr. Fitzgerald alleges that Defendants Watkins, Green, and Tarpley violated his Fourth Amendment right to be free from unreasonable seizures. Again construing Mr. Fitzgerald's Complaint liberally, he claims that Defendants "unlawfully seized [his] property," ECF No. 1, at 24, by entering his residential property without a warrant or consent and "r[unning] off contractors," *id.* at 22; *see also id.* at 20–21 (alleging that Sergeant Tarpley "demand[ed] everyone to leave and turn off the electrical power in the property"), thereby interrupting the work being done, *id.* at 22–23. At this stage, the Court finds that Mr. Fitzgerald has sufficiently alleged a meaningful interference with his possessory interests in his residential property to state a Fourth Amendment seizure claim. *C.f., e.g.*, *Presley*, 464 F.3d at 487–89 (reversing dismissal of plaintiff's Fourth Amendment seizure claim where plaintiff alleged that the presence of private trespassers, due to City's error in drawing trail map, had deprived her of the use of part of her property).

Defendants argue that the individual officer-defendants are entitled to qualified immunity on Mr. Fitzgerald's Fourth Amendment claims. ECF No. 11-1, at 9–11. Mr. Fitzgerald brings his Fourth Amendment claims under 42 U.S.C. § 1983, which "provides a federal cause of action to redress constitutional harms committed under color of state law." *Smith v. Travelpiece*, 31 F.4th 878, 882–83 (4th Cir. 2022). Under the doctrine of qualified immunity, however, government officials are shielded from liability for monetary damages under § 1983 "so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. City of Greensboro*, 586 F. Supp. 3d 466, 492 (M.D.N.C. 2022) (quoting *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006)). To

11

determine whether an official is entitled to qualified immunity, courts conduct a two-prong analysis that asks whether: (1) "the official violated a statutory or constitutional right"; and (2) "the right was 'clearly established' at the time of the challenged conduct." *Mays v. Sprinkle*, 992 F.3d 295, 301 (4th Cir. 2021) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). With respect to the second prong, a "right is clearly established if, according to pre-existing law, '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *White*, 586 F. Supp. 3d at 492 (alterations in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). While the "unlawfulness" of the official's action "must be apparent, . . . the test does not require that 'the very action in question has previously been held unlawful.'" *Id.* (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). A negative determination on either prong entitles the officer to qualified immunity. *See, e.g.*, *Rock for Life-UMBC v. Hrabowski*, 411 F. App'x 541, 547 (4th Cir. 2010).

Under the foregoing analysis, the individual defendants are not entitled to qualified immunity at this stage. First, as discussed above, the Court finds that Mr. Fitzgerald has plausibly alleged that the individual Defendants violated his Fourth Amendment rights. Second, "there are decades of case law establishing that, absent few and narrow exceptions, the warrant requirement extends to administrative searches conducted by a code enforcement agency." *Gold*, 2021 WL 2593804, at *7 (citing *Camara*, 387 U.S. at 533). Indeed, other courts in the Fourth Circuit have denied qualified immunity to officers who conducted warrantless administrative searches. *See, e.g.*, *id.*; *Reyes*, 2021 WL 8014683, at *11; *Mendes*, 2020 WL 3473656, at *8.

Because Mr. Fitzgerald has plausibly alleged that Defendants Watkins, Green, and Tarpley violated his right to be free from unreasonable searches and seizures, and because the individual

defendants are not entitled to qualified immunity, the Court will deny Defendants' Motion to Dismiss Mr. Fitzgerald's Fourth Amendment claims.

### III. Third Cause of Action: Violation of Maryland Declaration of Rights, Articles 16 and 24

Mr. Fitzgerald also brings a cause of action under Articles 16 and 24 of the Maryland Declaration of Rights on the basis that "violations of Article 16 are read *in pari materia* with the Fourth Amendment of the U.S. Constitution." ECF No. 1, at 24.  Article 16 is generally interpreted analogously to the Eighth Amendment to the U.S. Constitution.  *See Harris v. State*, 256 A.3d 292, 314 n.19 (Md. Ct. Spec. App. 2021) (citing *Miles v. State*, 80 A.3d 242, 249–51 (Md. 2013)).  Though Mr. Fitzgerald does not explain the basis for his Article 24 claim, Article 24 is generally interpreted analogously to the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.  *See Estate of Green v. City of Annapolis*, No. 1:22-cv-03198-JRR, 2023 WL 6381453, at *18 (D. Md. Sept. 30, 2023) (citing *Doe v. Dep't of Pub. Safety & Corr. Servs.*, 971 A.2d 975, 982 (Md. Ct. Spec. App. 2009)).  However, the Supreme Court of Maryland has a "longstanding practice of interpreting Article 26 *in pari materia* with the Fourth Amendment." *Washington v. Maryland*, 287 A.3d 301, 309 (Md. 2022).  Especially considering Mr. Fitzgerald's statement that his cause of action under Articles 16 and 24 is based on his cause of action for violation of his Fourth Amendment rights, ECF No. 1, at 24, a liberal construction of Mr. Fitzgerald's Complaint suggests that he intended to state a claim under Article 26 of the Maryland Declaration of Rights.  Since the Court has found that Mr. Fitzgerald stated a plausible claim against Defendants Watkins, Green, and Tarpley for violation of his Fourth Amendment rights, it likewise finds that he has stated a plausible claim against Defendants Watkins, Green, and Tarpley under Article 26.  Therefore, the Court will deny Defendants' Motion to Dismiss Mr. Fitzgerald's claim under the Maryland Declaration of Rights.

### IV.  Fourth Cause of Action: Negligent Hiring, Training, and Supervision

To state a claim of negligent hiring, training, or supervision under Maryland law, a plaintiff must show that: "(1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff suffered actual injury; and (4) the injury proximately resulted from the defendant's breach." *Jones v. Maryland*, 38 A.3d 333, 343 (Md. 2012).  In cases alleging that the negligent hiring, training, or supervision resulted in violations of the Fourth Amendment, "the standard of care is established by the Fourth Amendment to the Constitution of the United States and the judicial gloss placed upon it by the Supreme Court." *Id.* at 348 (footnote omitted). Additionally, to establish proximate cause, the plaintiff must show that the deficiency in hiring, training, or supervision was both "a cause in fact" and "a legally cognizable cause" of the plaintiff's injury.  *Id.* at 352 (quoting *Pittway Corp. v. Collins*, 973 A.2d 771, 786 (Md. 2009)).

Mr. Fitzgerald brings this cause of action against the City, alleging that the City "negligently trained, hired, retained, and supervised Defendants" and "knew or should have known that Defendant [sic] Watkins and Green behaved, and performed as code enforcement officers, in a dangerous and/or incompetent manner."  ECF No. 1, at 25.  Earlier in his Complaint, he also states that Ms. Watkins, "[a]s Defendant Green's training officer, . . . failed to train Defendant Green to the 2018 Maryland IBC Standards." *Id.* at 21–22.

Defendants argue that the City is immune from suit on Mr. Fitzgerald's negligent hiring, training, and supervision claim under the doctrine of governmental immunity.  ECF No. 11-1, at 5–8.  Under Maryland law, a municipality is immune from liability "for its torts . . . if acting in a governmental capacity."  *McCullough*, 2020 WL 836235, at *3 (quoting *Nam v. Montgomery County*, 732 A.2d 356, 362 (Md. Ct. Spec. App. 1999)).  Governmental functions include the operation of a police force, *Bagheri v. Montgomery County*, 949 A.2d 1, 3 (Md. Ct. Spec. App.

14

2008), as well as the "enforcement of building codes and ordinances," *E. Eyring & Sons Co. v. City of Baltimore*, 252 A.2d 824, 826 (Md. 1969) (quoting 7 Eugene McQuillin, *The Law of Municipal Corporations* § 24.507 (3d ed.)).  However, this governmental immunity does not apply to "nuisance actions" or "actions based on violations of constitutional rights." *Bd. of Educ. v. Mayor of Riverdale*, 578 A.2d 207, 210 (Md. 1990).

A claim of negligent hiring, training, or supervision can arise out of a violation of constitutional rights.  *See, e.g.*, *Mang v. City of Greenbelt*, No. DKC 11-1891, 2012 WL 115454, at *6 (D. Md. Jan. 13, 2012).  In such cases, governmental immunity does not apply.  *Id.*  While Mr. Fitzgerald alleges separate violations of his constitutional rights, he does not connect those violations to his claim for negligent hiring, training, or supervision, or otherwise specify how the City's alleged negligence caused him to suffer an actual injury.  To the extent that Plaintiff alleges that the City trained its officers on the 2005 Code, as opposed to 2018 state version, Plaintiff fails to explain how the Codes were meaningfully different such that the individual officers would not have unlawfully trespassed upon, searched and seized his property had they been properly trained or supervised.  Thus, the Court finds that Mr. Fitzgerald has failed to state a claim for negligent hiring, training, or supervision against the City.  *See, e.g.*, *Drewry v. Stevenson*, No. WDQ-09-2340, 2010 WL 93268, at *4 (D. Md. Jan. 6, 2010) (finding that plaintiff did not plausibly allege claim for failure to train where, though plaintiff claimed that defendant-county "acted with deliberate indifference," his complaint did not contain any facts showing the nature of the training, that "any failure to train was a 'deliberate or conscious' choice," or that the injury-causing conduct was caused by a failure to train).

Similarly, the Court finds that Mr. Fitzgerald has failed to state a claim for negligent hiring, training, or supervision against Ms. Watkins.  Though Mr. Fitzgerald alleges that Ms. Watkins

"failed to train Defendant Green to the 2018 Maryland IBC Standards," ECF No. 1, at 21–22, he does not explain how the lack of such training caused his alleged injuries.

For these reasons, the Court will grant Defendants' Motion to Dismiss Mr. Fitzgerald's claim for negligent hiring, training, and supervision.

### V. Fifth Cause of Action: Conspiracy to Harass

Section 1985(3) "creates a cause of action for people who have been deprived of rights or privileges by two or more persons acting in a conspiracy with a class-based animus." *Antonio v. Sec. Servs. of Am., LLC*, 701 F. Supp. 2d 749, 772 (D. Md. 2010) (citing 42 U.S.C. § 1985(3)). To state a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must show:

> (1) [A] conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (quoting *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995)). In order "to prevent § 1985(3) from becoming a 'general federal tort law,'" *Korotki v. Goughan*, 597 F. Supp. 1365, 1372 (D. Md. 1984) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)), a plaintiff can state a claim only by showing that the defendant acted with animus toward a class "possessed of discrete, insular and immutable characteristics comparable to those characterizing classes such as race, national origin and sex," *id.* at 1374 (quoting *Savina v. Gebhart*, 497 F. Supp. 65, 68 (D. Md. 1980)).

Mr. Fitzgerald alleges that Defendants conspired to harass him. In support of his claim, Mr. Fitzgerald cites Defendants' use of "the Maryland District Court system to report and record erroneous municipal infractions and peace orders against [him]," ECF No. 1, at 18, as well as Defendants' unresponsiveness during his "attempts to obtain a building permit," *id.* at 20, and Mr.

16

Tarpley's trespass onto his property, *id.* at 20–21.  As Defendants argue, however, Mr. Fitzgerald makes no allegation that any of Defendants' actions were motivated by a class-based animus.  ECF No. 11-1, at 8–9.  Because such animus is an "essential" requirement of a § 1985(3) conspiracy, *Korotki*, 597 F. Supp. at 1372, Mr. Fitzgerald has failed to state a claim on this basis, *see, e.g.*, *Boyd v. Wal-Mart Stores Inc.*, No. 3:11-845-JFA-PJG, 2011 WL 13176607, at *4 (D.S.C. June 8, 2011) (concluding that the plaintiff failed to state a claim under § 1985(3) where he alleged "no facts . . . that tend to show the acts complained of were motivated by any improper classification"), *report and recommendation adopted*, No. 3:11-845-JFA-PJG, 2011 WL 13176608 (D.S.C. Aug. 12, 2011); *Tolbert v. Goode*, No. 1:08-1258, 2009 WL 3424329, at *8 (S.D. W. Va. Oct. 22, 2009) (dismissing the plaintiffs' § 1985(3) claim where there was "no evidence that [d]efendants' actions were motivated by a specific class-based, invidiously discriminatory animus").  Therefore, the Court will grant Defendants' Motion to Dismiss Mr. Fitzgerald's § 1985(3) claim.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss, ECF No. 11, is, hereby, granted, in part, and denied, in part.  Plaintiff's following claims may proceed: 1) for trespass against Defendants Watkins, Green, and Tarpley in their individual capacities; 2) for violation of the Fourth Amendment to the United States Constitution against Defendants Watkins, Green, and Tarpley; and 3) for violation of Article 26 of the Maryland Declaration of Rights against Defendants Watkins, Green, and Tarpley.  All other claims are dismissed.

So ordered.

Date:  November 17, 2023                                       /s/
                                                                                Ajmel A. Quereshi
                                                                                U.S. Magistrate Judge